UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAR-FRESHNER CORP.; and
JULIUS SAMANN, LTD.,

       Plaintiffs,   7:09-CV-1252
             (GTS/GHL)

v.

GETTY IMAGES, INC.; and
GETTY IMAGES (US), INC.,

       Defendants,

_____

APPEARANCES:      OF COUNSEL:

MACKENZIE HUGHES, LLP   NANCY L. PONTIUS, ESQ.
 Counsel for Plaintiffs
101 South Salina Street
PO Box 4967
Syracuse, NY 13221-4967

OBLON, SPIVAK McCLELLAND,  JONATHAN HUDIS, ESQ.
MAIER & NEUSTADT, LLP   ROBERTA S. BREN, ESQ.
 Co-Counsel for Plaintiffs
1940 Duke Street
Alexandria, VA 22314

DAVIS WRIGHT & TREMAINE, LLP CHRISTOPHER J. ROBINSON, ESQ.
 Counsel for Defendants   JAMES E. ROSENFELD, ESQ.
1633 Broadway
27th Floor
New York, NY 10019-4315

HISCOCK & BARCLAY, LLP   DOUGLAS J. NASH, ESQ.
 Co-Counsel for Defendants
One Park Place
300 South State Street
Syracuse, NY 13202-2078

HON. GLENN T. SUDDABY, United States District Judge

## <u>MEMORANDUM-DECISION and ORDER</u>

Currently before the Court, in this trademark and unfair competition action filed by

Car-Freshner Corporation ("CFC") and Julius Sämann Ltd. ("JSL") (collectively "Plaintiffs")

against Getty Images, Inc. and Getty Images (U.S.) Inc. ("Defendants"), are the following two

motions: (1) Defendants' motion to dismiss Plaintiffs' Amended Complaint for failure to state a

claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative,

for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 14); and (2) Plaintiffs' cross-

motion requesting that the Court reserve its decision on Defendants' motion pending Plaintiffs'

receipt of further discovery, and/or their ability to further brief the issues, pursuant to Fed. R.

Civ. P. 56(d) (Dkt. No. 16).[1]   For the reasons set forth below, Defendants' motion is granted in

part and denied in part; and Plaintiffs' cross-motion is granted in part and denied in part.

---

[1]      Accompanying Plaintiffs' cross-motion for discovery was a motion to add as a
Defendant in this action Getty-US. (Dkt. No. 16.) On September 30, 2010, United States
Magistrate Judge George H. Lowe issued an Order that (1) granted in part, and otherwise
deferred, Plaintiffs' cross-motion for discovery, and (2) granted Plaintiffs' motion to add as a
Defendant in this action Getty-US, directing Plaintiffs' to so amend their Complaint. (Dkt. No.
25.) On October 7, 2010, following Plaintiffs' filing of an Amended Complaint, Defendants
submitted a letter-brief confirming their understanding that the Court would consider the pending
motion to dismiss or for summary judgment (filed by Defendant Getty Images, Inc., against
Plaintiffs) to have been filed by both Defendants, and to apply to Plaintiffs' Amended
Complaint. (Dkt. No. 30.) Neither Plaintiffs nor Magistrate Judge Lowe filed any document
indicating a contrary understanding. Subsequently, Magistrate Judge Lowe issued further
rulings on the deferred portion of his Order of September 30, 2010. (*See generally* Docket
Sheet.) As a result, the Court deems the motion to dismiss or for summary judgment to have
been filed by both Defendants, and to apply to Plaintiffs' Amended Complaint. In addition, the
Court considers only that portion of Plaintiffs' cross-motion requesting that the Court reserve its
decision on Defendants' motion pending Plaintiffs' receipt of further discovery, and/or their
ability to further brief the issues.

# I.     RELEVANT BACKGROUND

## A.     Plaintiffs' Claims

Generally, liberally construed, Plaintiffs' Amended Complaint alleges as follows.

Plaintiffs are engaged in the business of manufacturing and marketing products, such as air fresheners, using distinctive Tree designs as trademarks and corporate identifiers.  (Dkt. No. 28 at ¶ 14 [Plfs.' Am. Compl.].)  In addition to owning federal registrations for the famous Tree design Marks (collectively the "Tree Marks"), Plaintiffs have common law trademark rights to the famous Tree Marks, which are used in commerce in connection with various goods.  (*Id.* at ¶¶15-18, 21.)

Defendants are engaged in the business of licensing digital media through their website to customers.  (*Id.* at ¶ 9.)  Defendants have infringed on Plaintiffs' Tree Marks by "promoting and licensing digital media for commercial use through [their] Web Site(s) that included one or more tree designs which are identical to, virtually indistinguishable from and/or confusingly similar to Plaintiffs' distinctive Tree . . . Marks."  (*Id.* at ¶ 23.)  In addition, "Defendants engaged in their unauthorized and complained of conduct with full knowledge of the value and fame of the Tree . . . Marks, and long after the Tree . . . Marks had become famous."  (*Id.* at ¶ 26.)

Based on these (and other) factual allegations, Plaintiffs' Amended Complaint asserts the following eight claims: (1) federal trademark infringement; (2) federal false designation of origin; (3) common law trademark infringement; (4) common law unfair competition; (5) contributory trademark infringement, unfair competition and dilution; (6) vicarious trademark infringement, unfair competition and dilution; (7) federal dilution; and (8) dilution under New York State law.  (*Id.* at ¶¶ 43-75.)

Familiarity with the remaining factual allegations supporting these claims in Plaintiffs'

Amended Complaint is assumed in this Decision and Order, which is intended primarily for

review by the parties.  (*Id*.)

### B.    Defendants' Motion and Plaintiffs' Opposition/Cross-Motion

Generally, in support of their motion to dismiss for failure to state a claim or, in the

alternative, for summary judgment, Defendants asserts the following three arguments: (1)

Plaintiffs have not alleged facts plausibly suggesting, or adduced admissible record evidence

establishing, that Defendants have "used" the Tree Marks as trademarks to identify their source

or sell their own goods (through their descriptive and expressive fair use of those Tree Marks);

(2) even assuming that Plaintiffs have alleged such facts and adduced such evidence, Defendants

are protected from liability as a matter of law by the "nominative fair use" doctrine essentially

because Defendants are not capitalizing on consumer confusion (through their incidental and

purely descriptive use of the Tree Marks); and (3) even assuming that Defendants are not so

protected, Plaintiffs' claims of contributory infringement and vicarious liability must be

dismissed, because they have not alleged facts plausibly suggesting, or adduced admissible

record evidence establishing, a claim for either contributory infringement or vicarious liability.

(*See generally* Dkt. No. 14, Attach. 1 [Defs.' Memo. of Law].)

Generally, in opposition to Defendants' motion, and in support of their cross-motion

pursuant to Fed. R. Civ. P. 56(d),[2] Plaintiffs argue as follows: (1) Defendants' motion to dismiss

for failure to state a claim should be denied, because Plaintiffs have adequately pled each of their

---

[2]     At the time Plaintiffs' filed their cross-motion on February 23, 2010, the
subdivision of Fed. R. Civ. P. 56 that permitted cross-motions for discovery (in opposition to a
motion for summary judgment) was subdivision (f).  However, Fed. R. Civ. P. 56 was amended
on April 28, 2010.  Pursuant to the amendments, subdivision (d) carried forward without
substantial change the provisions of former subdivision (f).

eight claims; (2) in the alternative, Defendants' motion to dismiss for failure to state a claim should be denied, because each of the factually based defenses asserted by Defendants (i.e., the defenses of non-trademark use, descriptive fair use, expressive fair use, and nominative fair use) rely on record evidence (i.e., facts and materials asserted through Defendants' counsel's affidavit), which may not be considered by the Court without treating Defendants' motion as one for summary judgment; and (3) the Court should reserve its decision on Defendants' alternative motion for summary judgment pending Plaintiffs' receipt of further discovery, and/or their ability to further brief the issues.  (*See generally* Dkt. No. 16, Attach. 6 [Plfs.' Response Memo. of Law].)[3]

Generally, in their reply to Plaintiffs' response, in addition to reiterating previously advanced arguments, Defendants argue that the Court may fairly decide (and grant) their alternative motion for summary judgment without affording Plaintiffs an opportunity to conduct discovery, because Plaintiffs have not submitted an affidavit showing (1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort Plaintiffs have made to obtain them, and (4) why Plaintiffs have been unsuccessful in those efforts.  (Dkt. No. 17.)[4]

---

[3]      In their motion, Plaintiffs also requested joinder of Getty Images (US), Inc., as a Defendant pursuant to Fed. R. Civ. P. 19 and 20.  As explained above in note 1 of this Decision and Order, that request was granted by Magistrate Judge Lowe on September 30, 2010.

[4]      Defendant Getty Images, Inc., also states that it "has no objection to the addition of [Getty-US] as a [D]efendant[,]" but asserts that "Getty Images (US), Inc. should be substituted for [Defendant Getty Images, Inc., because it] has no involvement in the matters at issue."  (Dkt. No. 18.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions to Dismiss for Failure to State a Claim

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions to dismiss, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Bridgeforth v. Popovics*, 09-CV-0545, 2011 WL 2133661, at *2-4 (N.D.N.Y. May 25, 2011) (Suddaby, J.), which accurately recites that legal standard.

However, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), a court may consider the following matters outside the four corners of the complaint without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference in the complaint, are "integral" to the complaint (and are provided by the parties), or (4) any matter of which the court can take judicial notice for the factual background of the case.[5]

---

[5]       *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a

**B.      Legal Standard Governing Motions for Summary Judgment**

Rule 12(d) of the Federal Rules of Civil Procedure provides that, "[i]f, on a motion under

Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the

court, the motion must be treated as one for summary judgment under Rule 56[, and] [a]ll parties

must be given a reasonable opportunity to present all the material that is pertinent to the motion."

Fed. R. Civ. P. 12(d).  "[T]he conversion of a Rule 12(b)(6) motion into one for summary

judgment under Rule 56 when the court considers matters outside the pleadings is strictly

enforced and mandatory."  *Global Network Commc'ns, Inc.*, 458 F.3d at 155.  Ordinarily, before

converting a motion to dismiss under Fed. R. Civ. P. 12(b)(6) into one for summary judgment

under Fed. R. Civ. P. 56, formal notice is not required where a party "should reasonably have

recognized the possibility that the motion might be converted into one for summary judgment

[and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts

outside the pleadings."  *Villante v. Dep't of Corr. of City of New York*, 786 F.2d 516, 521 (2d Cir.

1986) (internal quotation marks and citation omitted).

**C.      Legal Standard Governing a Cross-Motion for Discovery, in Opposition to a
      Motion for Summary Judgment Motion, Under Fed. R. Civ. P. 56(d)**

Rule 56(d) of the Federal Rules of Civil Procedure provides as follows:

> If a nonmovant shows by affidavit or declaration that, for specified
> reasons, it cannot present facts essential to justify its opposition, the
> court may: (1) defer considering the motion or deny it; (2) allow time
> to obtain affidavits or declarations or to take discovery; or (3) issue
> any other appropriate order.

---

motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary
under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents
attached to the complaint or answer, [2] documents incorporated by reference in the complaint
(and provided by the parties), [3] documents that, although not incorporated by reference, are
"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the
factual background of the case).

Fed. R. Civ. P. 56(d).  This rule has been appropriately characterized as providing as "a narrow

exception to the availability of summary judgment in instances where a party cannot fairly

respond to a summary judgment motion because of the inability, through no fault of that party, to

acquire evidence which is available and would preclude the entry of summary judgment."

*Steptoe v. City of Syracuse*, 09-CV-1132, 2010 WL 5174998, at *4 (N.D.N.Y. Oct 5, 2010)

(Peebles, M.J.), *adopted by* 2010 WL 5185809 (N.D.N.Y. Dec. 15, 2010) (Mordue, C.J.).[6]  To

obtain relief under Fed. R. Civ. P. 56(d), a litigant must submit an affidavit showing "(1) what

facts are sought to resist the motion and how they are to be obtained, (2) how those facts are

reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has

made to obtain them, and (4) why the affiant has been unsuccessful in those efforts."  *Miller v.*

*Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 303 (2d Cir. 2003).[7]

## III.    ANALYSIS

After carefully considering the parties' briefing on Plaintiffs' cross-motion (requesting

that the Court reserve its decision on Defendants' motion pending Plaintiffs' receipt of further

discovery, and/or their ability to further brief the issue), the Court finds as follows: (1) some of

the documents on which Defendants rely in asserting their alternative motion for summary

---

[6]     *Accord, Gill v. Calescibetta*, 00-CV-1553, 2009 WL 890661, at *7 (N.D.N.Y. March 31, 2009) (Report-Recommendation by Peebles, M.J., adopted by Suddaby, J.); *Gill v. Hoadley*, 261 F. Supp.2d 113, 132 (N.D.N.Y. 2003) (Peebles, M.J.), *adopted by* Memorandum-Decision and Order (N.D.N.Y. filed Jan. 9, 2004) (Scullin, C.J.).

[7]     *Accord, Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999); *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994); *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985); *Capital Imaging Assoc., P.C. v. Mohawk Valley Medical Assoc., Inc.*, 725 F. Supp. 669, 680 (N.D.N.Y. 1989) (McCurn, C.J.), *aff'd*, 996 F.2d 537 (2d Cir. 1993).

judgment are considered by the Court in Defendants' motion to dismiss for failure to state a claim;[8] (2) generally, Plaintiffs' counsel's affidavit does show [a] what facts are sought to resist the motion and how they are to be obtained, [b] how those facts are reasonably expected to create a genuine issue of material fact, [c] what effort counsel has made to obtain them, and [d] why counsel has been unsuccessful in those efforts;[9] and (3) while Magistrate Judge Lowe directed Defendants to respond to Plaintiffs' proposed interrogatories and document request by November 1, 2010, the paper discovery he directed was provided to Plaintiffs some eight months *after* the expiration of the deadline for Plaintiffs' response to Defendants' alternative motion for summary judgment.[10]

For all of these reasons, the Court agrees with Plaintiffs that Defendants' alternative motion for summary judgment is not ripe for decision. However, rather than staying its decision on that alternative motion pending Plaintiffs' receipt of further discovery, and/or their ability to further brief the issues, the Court finds it more appropriate to simply deny that alternative motion without prejudice, given the nature of the briefing that has occurred thus far. In this regard, Plaintiff's cross-motion is granted in part and denied in part. This proceeding shall return to Magistrate Judge Lowe for, *inter alia*, the supervision of the conducting of discovery.

Turning to an analysis of Defendants' alternative motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and what documents the Court may consider (in

---

[8]      (*Compare* Dkt. No. 28, Attach. 1 [attaching 11 images with no accompanying text] *with* Dkt. No. 14, Attach. 5-10 [attaching 11 images with accompanying text, license agreements and releases].)

[9]      (Dkt. No. 16, Attach. 1, at ¶¶ 6, 8-17; Dkt. No. 16, Attachs. 3-5 [attaching Exs. B-D to Decl. of Jonathan Hudis].)

[10]      (*Compare* Text Order dated Jan. 22, 2010 [setting response deadline as March 1, 2010] *with* Dkt. No. 25, at 4 [setting deadline for limited paper discovery as Nov. 1, 2010]).

addition to the four-corners of the Amended Complaint) in deciding that motion, the Court begins by noting that the parties do not focus on whether the Court may consider the eleven "representative" images contained in Exhibit A to Plaintiff's Amended Complaint.  Rather, the parties focus on whether the Court may consider (1) the documents attached as exhibits to the declaration of Defendants' counsel (i.e., the text accompanying the eleven images at issue on Defendants' website, as well as the license agreements and releases that may be accessed through internet links contained in that accompanying text), and (2) the sworn factual assertions contained in the affidavit of Defendants' counsel.[11]

The Court need not linger on the latter type of information described (i.e., the sworn factual assertions contained in the affidavit of Defendants' counsel): the Court finds that it may not properly consider that information on a motion to dismiss for failure to state a claim.[12]

A closer question is presented by the former type of information described (i.e., the documents attached as exhibits to the declaration of Defendants' counsel).  If it was undisputed

---

[11]     (*Compare* Dkt. No. 14, Attach. 3, ¶¶ 4-9 [Affid. of James Rosenfeld, essentially arguing that Plaintiffs have incorporated by reference in their operative pleading the text accompanying the images on Defendants' website, as well as the license agreements and releases that may be accessed through internet links contained in that accompanying text] *with* Dkt. No. 16, Attach. 6, at 20 [attaching page "12" of Plfs.' Opp. Memo. of Law, essentially arguing that Plaintiffs have not incorporated by reference in their operative pleading the documents at issue, because the genuineness of those documents, and the fact of whether they are available to visitors on Defendants' website, hinges on sworn statements made in Defendants' counsel's affidavit, which may not be properly considered on a motion to dismiss for failure to state a claim].)

[12]     *See Degrosiellier v. Solomon & Solomon, P.C.*, 00-CV-1065, 2001 WL 1217181, at *2 (N.D.N.Y. Sept. 27, 2001) (Mordue, J.) ("declin[ing] to consider any factual averments contained in defense counsel's supporting affidavit in connection with [defendant's motion to dismiss for failure to state a claim upon which relief can be granted]"); *cf.  Anderson v. Cnty. of Nassau*, 297 F. Supp.2d 540, 545 (E.D.N.Y. 2004) (declining to take judicial notice of purported facts stated in attorney affidavit in deciding motion to dismiss for failure to state claim even though court did not "doubt the reliability of the facts in th[e] affidavit" because the court had "no documentation to verify the accuracy of the[] statements").

that the documents provided by Defendants' counsel came from Defendants' website, and were

viewed by visitors, during the time period referenced in Plaintiffs' Amended Complaint, the

Court would have some difficulty excluding them from consideration, because most of them

would appear incorporated by reference in and/or integral to Plaintiffs' Amended Complaint.

However, Plaintiff sufficiently dispute the genuineness and/or accessibility those documents.

(Dkt. No. 16, Attach. 6, at 20 [attaching page "12" of Plfs.' Opp. Memo. of Law].)  Simply

stated, the Court is not confident that the documents provided by Defendants are the documents

that are in fact incorporated by reference in and/or integral to Plaintiffs' Amended Complaint.[13]

As a result, in deciding Defendants' alternative motion to dismiss for failure to state a

claim, the Court will consider only the four corners of Plaintiffs' Amended Complaint, and the

eleven "representative" images contained in Exhibit A to that Amended Complaint.  Having

decided this issue, the Court will now address the arguments raised by the parties on Defendants'

alternative motion to dismiss for failure to state a claim.

### A.        Whether Defendants Have "Used" the Tree Marks as Trademarks

As stated above in Part I.B. of this Decision and Order, Defendants seek the dismissal of

Plaintiffs' claims based on Defendants' argument that they have not "used" Plaintiffs' Tree

---

[13]        *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (explaining that "it must
be clear on the record that no dispute exists regarding the authenticity or accuracy of the
document" before document outside of the complaint may be considered on a motion to dismiss
for failure to state a claim); *Barberan v. Nationpoint*, 706 F. Supp.2d 408, 415-16 (S.D.N.Y.
2010) ("The Court will not [on a motion to dismiss for failure to state a claim] consider those
documents submitted by Defendants that are not subject to judicial notice because there are
disputes, even if of questionable viability, regarding the authenticity of these documents.");
*Brown v. DeFrank*, 06-CV-2235, 2006 WL 3313821, at *22 (S.D.N.Y. Nov. 15, 2006) (stating
that the court could not consider certain exhibits on a motion to dismiss for failure to state a
claim, because the plaintiff disputed the accuracy of those exhibits); *cf. Cellular Tech. Servs.
Co., Inc. v. TruePosition, Inc.*, 609 F. Supp.2d 223, 227 (D. Conn. 2009) (considering documents
integral to the complaint when "no dispute exists regarding their authenticity or accuracy").

Marks as trademarks to identify their source or sell their own goods (through their descriptive and expressive fair use of those Tree Marks).

As an initial matter, to consider Defendants' argument regarding their use of Plaintiffs' Tree Marks, the Court must consider the images from Defendants' website that Plaintiffs claim infringe on their Tree Marks.  As explained above in the introduction to Part III of this Decision and Order, the Court may, and will, do so because those images are incorporated by reference in, and attached to, the Amended Complaint.  (Dkt. No. 28 & Attach. 1.)

Turning to the issue of whether Defendants have "used" the Tree Marks in commerce, Defendants argue that their "use" of Plaintiffs' Tree Marks constitutes "fair use" (and therefore they have not "used" the Tree Marks as trademarks), because the Tree Marks are being "used" by Defendants only in "their primary descriptive sense."  The Fair Use Doctrine, which is codified in the Lanham Act at 15 United States Code § 1115(b), refers to use "otherwise than as a mark . . . which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin."  15 U.S.C. § 1159(b)(4).  "To come within the fair use defense, Defendants must have made use of Plaintiffs' Tree Mark "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc. and Spalding Sports Worldwide*, 228 F.3d 56, 64 (2d Cir. 2000).

With regard to the first prong of the fair use defense, the Court finds that Plaintiffs have alleged facts plausibly suggesting that Defendants use the Tree Marks (or "tree designs which are identical to, virtually indistinguishable from and/or confusingly similar to Plaintiffs' distinctive Tree . . . Marks") in commerce as trademarks.  Moreover, after examining the images sold on Defendants' website containing the Tree Marks, the Court finds that Plaintiffs have alleged facts plausibly suggesting that Defendants use Plaintiffs' Tree Marks in the pictures in

which the Tree Marks are depicted to sell the pictures.  In other words, the Court finds that Plaintiffs have sufficiently alleged that Defendants use Plaintiffs' Tree Marks in commerce as trademarks.  *See* 15 U.S.C. § 1127 (defining "use in commerce" to occur when a mark is "placed in any manner on the goods" or "used or displayed in the sale or advertising of services," and similarly defining the terms "trademark" and "service mark" as "any word, name, symbol, or device, or any combination thereof" that is "used by a person . . . to identify and distinguish his or her goods [or services]").

For example, one of the images on Defendants' website is of a Tree Mark bearing the words "Car-Freshner" and "'Royal Pine,'" with its shadow.  (Dkt. No. 28, Attach. 1, at 4.)  A second image depicts a red Tree Mark bearing the words "Fresh Scent," resting in green grass, at the forefront of an open field, with the out-of-focus background consisting of grass and trees. (*Id*. at 2.)  A third image depicts a Tree Mark hanging from the armpit of a man who has his shirt unbuttoned, plausibly suggesting that it is an odor fighter (as is Plaintiffs' product).   (*Id*. at 3.) A fourth images depicts approximately ten Tree Marks hanging from the lid of a garbage can, again plausibly suggesting that it is an odor fighter.  (*Id*. at 2.)  Four more images depict a Tree Mark hanging from the rear view mirror of an automobile (as Plaintiffs' product often hangs). (*Id*. at 2-4.)[14]

As a result, the Court denies Defendants' motion to dismiss Plaintiffs' claims based on Defendants' argument that their "use" of Plaintiffs' Tree Marks constitutes fair use.

_____

[14]     At this stage of the proceeding, the Court declines to apply the *Rogers* balancing test, set forth in *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989), which requires courts to construe the Lanham Act "to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression."  *See World Championship Wrestling v. Titan Sports, Inc*., 46 F. Supp.2d 118, 123 (D. Conn. 1999) (declining to apply the *Rogers* balancing test, noting that the test " involves factual and legal issues which cannot be disposed of at [the pleading] stage [of] the case"); *cf. Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990) (noting that "[n]ormally, the likelihood of confusion is a factual question" [citing *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir. 1981)]).

**B.      Whether Defendants' "Use" of Plaintiffs' Tree Marks Constitutes Nominative Fair Use**

As stated above in Part I.B. of this Decision and Order, Defendants seek the dismissal of Plaintiffs' claims based on Defendants' argument that, even assuming that Plaintiffs have alleged facts plausibly suggesting that Defendants have "used" the Tree Marks as trademarks, Defendants are protected from liability as a matter of law by the "nominative fair use" doctrine essentially because Defendants are not capitalizing on consumer confusion (through their incidental and purely descriptive use of the Tree Marks).

As an initial matter, the Second Circuit has never expressly adopted the doctrine of nominative fair use as a viable defense in a trademark infringement action.  *See Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010) (noting that "[w]e have referred to the doctrine, albeit without adopting or rejecting it," and declining to "address the viability of the doctrine [of nominative fair use] to resolve Tiffany's claim").  However, a number of district courts within the Second Circuit have applied this doctrine when considering claims of trademark infringement,[15] and in fact, on at least one occasion, the Second Circuit has implicitly affirmed the application.[16]  As a result, the Court assumes, for purposes of deciding the instant motion, that the doctrine is applicable.

---

[15]      *See Audi AG v. Shokan Coachworks, Inc.*, 592 F. Supp.2d 246, 269-270 (N.D.N.Y. 2008) (McCurn, J.) (acknowledging application of nominative fair use doctrine among numerous district courts within the Second Circuit) (collecting cases).

[16]      *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 156 (2d Cir. 2002) (acknowledging district court's application of "nominative" fair use doctrine as grounds for dismissal, noting that, "[w]hile th[e] example [in the Amended Complaint] may constitute a fair use, the Amended Complaint's allegations extend beyond this one instance of allegedly infringing conduct. . . . [and therefore] the District Court erred by dismissing the claim on the basis of the listed example without considering the other conduct raised by plaintiffs' allegations").

As the Second Circuit noted in *Tiffany (NJ) Inc.*, "the doctrine of nominative fair use allows '[a] defendant [to] use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of [the] defendant's product or the mark-holder's sponsorship or affiliation.'" *Tiffany (NJ) Inc.*, 600 F.3d at 102 (quoting *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp.2d 402, 413 [S.D.N.Y. 2006]); *see also Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 806 (9th Cir. 2002) (holding that an assertion of nominative fair use gives rise to a modified likelihood of confusion analysis). "To fall within the protection, according to the Ninth Circuit Court who carved out the doctrine,

> [f]irst, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

Here, the Court finds that Plaintiffs have alleged facts plausibly suggesting that Defendants' use Plaintiffs' Tree Marks in images that appear on Defendants' website. (Dkt. No. 28, at ¶ 24.) The Court finds that Plaintiffs have also alleged that this use "is likely to lead to confusion as to the source or origin of Defendants' Images, in that purchasers and users of Defendants' Images are likely to believe that they originate from, are sponsored by, are approved by, or in some way are affiliated with Plaintiffs." (Dkt. No. 28, at ¶ 28.)

As the Second Circuit recently commented in *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 130 (2d Cir. 2009),[17] the Court has "no idea" whether Plaintiffs can prove that a consumer would believe that Plaintiffs sponsored or otherwise approved of the use of the Tree Marks in the

---

[17]     The Court notes that the Circuit's comments were made in the context of analyzing whether Google's inclusion of Rescuecom's trademark in an internal computer directory constituted trademark use. *Rescuecom Corp.*, 562 F.3d at 129-30.

images displayed on Defendants' website.  However, Plaintiffs have alleged facts plausibly

suggesting that a consumer would believe that Plaintiffs sponsored or otherwise approved of the

use of the Tree Marks in the images displayed on Defendants' website.

The Court would add only three points.  First, after reviewing the images on Defendants'

website containing the Tree Marks, the Court finds plausible the allegation that a purchaser

and/or user of Defendants' images could be confused as to the source of origin of the images,

believing incorrectly that "they originate from, are sponsored by, are approved by, or in some

way are affiliated with Plaintiffs."  For example, in at least one of the eleven images, Plaintiffs'

corporate name is legible.  (Dkt. No. 28, Attach. 1, at 4.)  In addition, three of the eleven images

either expressly reference, or plausibly depict, a fresh scent–the creation of which, Plaintiffs

have plausibly alleged, is one of the purposes of their "Car-Freshner" product.  (Dkt. No. 28,

Attach. 1, at 2, 3 [attaching image of garbage can, man's underarm, and product containing

words "Fresh Scent"].)

Second, while a fact finder may ultimately determine that customers are not likely to be

confused as to the source, sponsorship, or approval of Defendants' use of the Tree Marks on

grounds of parody,[18] as the Ninth Circuit has noted, "the cry of 'parody!' does not magically

fend off otherwise legitimate claims of trademark infringement or dilution," and a claim of

parody can provide "no defense 'where the purpose of the similarity is to capitalize on a famous

mark's popularity for the defendants' own commercial use." *Dr. Seuss Enter., L.P. v. Penguin*

---

[18]     "'In a traditional trademark infringement suit founded on the likelihood of confusion rationale, the claim of parody is not really a separate "defense" as such, but merely a way of phrasing the traditional response that customers are not likely to be confused as to source, sponsorship or approval.'"  *Schieffelin & Co. v. Jack Co. of Boca*, 725 F. Supp. 1314, 1323 (S.D.N.Y. 1989) (quoting *McCarthy, Trademarks and Unfair Competition* [2d ed. 1984] § 31:38 at 667); *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1057 n.9 (10th Cir. 2008) ("[P]arody is not an affirmative defense that must be asserted by the defendant, but is simply a factor to be considered in determining the likelihood of confusion.").

*Books USA, Inc.*, 109 F.3d 1394, 1405-06 (9ᵗʰ Cir. 1997) (quoting *Hard Rock Café Licensing Corp. v. Pac. Graphics, Inc.*, 776 F. Supp. 1454, 1462 [W.D. Wash. 1991]).  Here, Plaintiffs have alleged that Defendants licensed images that displayed the Tree Marks with "full knowledge of the value and fame of the Tree . . . Marks." (Dkt. No. 28 at ¶¶ 23-26.)  Moreover, Plaintiffs have alleged that Defendants continued to promote and license Defendants' images even after receiving written notification of Plaintiffs' trademark registrations and trademark rights.  (Id. at ¶ 37.)  Furthermore, two of the images attached to Plaintiffs' Amended Complaint–the images of the Tree Mark inside a garbage can and under a man's arm–plausibly suggest that Plaintiffs' product is well known to be a powerful odor fighter.  (Dkt. No. 28, Attach. 1, at 2-3.)

Together, these factual allegations plausibly suggest that the purpose of using the Tree Marks in the pictures was to capitalize on the popularity of the marks.  As a result, the Court declines to dismiss any of Plaintiffs' claims with regard to any of the alleged infringing images on grounds of parody, based on a Fed. R. Civ. P. 12(b)(6) analysis.

Third, the Court rejects Defendants' argument in their letter brief (filed after their motion to dismiss was submitted) that the Second Circuit's recent decision in *Tiffany (NJ) Inc. v. eBay Inc.* "directly bears on the[ir current] motion." (Dkt. No. 22.)  To the contrary, the Court finds inapposite this decision, and in particular the Circuit's finding that "a defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant." *Tiffany (NJ) Inc.*, 600 F.3d at 102-03.  This is because, unlike in *Tiffany (NJ) Inc.*, where "eBay used the [Tiffany's] mark to describe accurately the genuine Tiffany goods offered for sale on its website[,]" *Id.* at 103, Defendants here are not sellers or traders of branded products.  *See Dow Jones & Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 308 (2d Cir. 2006) ("While a trademark

17

conveys an exclusive right to the use of a mark in commerce in the area reserved, that right generally does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product.").

For these reasons, the Court denies Defendants' motion to dismiss Plaintiffs' claims based on Defendants' argument that their "use" of Plaintiffs' Tree Marks constitutes nominative fair use.

### C.   Whether Plaintiffs Have Alleged Facts Plausibly Suggesting a Claim for Secondary Infringement

As stated above in Part I.B. of this Decision and Order, Defendants seek the dismissal of Plaintiffs' contributory infringement and vicarious liability claims because, even assuming that Defendants are not protected from liability as a matter of law by the "nominative fair use doctrine," Plaintiffs hey have not alleged facts plausibly suggesting a claim for either contributory infringement or vicarious liability.

### 1.   Contributory Infringement

Secondary liability for infringement arises when "a manufacturer or distributor intentionally induces another to infringe a trademark, or . . . continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982).

In support of their contributory secondary liability claims, Plaintiffs allege that Defendants "intentionally induced others (i.e., Getty's customers) to infringe, unfairly compete with and/or dilute the Tree . . . Marks by the promotion and licensing of Defendant's Images for commercial use by others." (Dkt. No. 28 at ¶ 29.)  Plaintiffs also allege that "Defendants have continued to supply Defendants' Images to others (i.e., Defendants' customers) with the

knowledge that they are engaging in trademark infringement, unfair competition and/or dilution with respect to Plaintiffs' Tree . . . Marks." (*Id*. at ¶ 30.) Finally, Plaintiffs allege that Defendants offer licenses of the images containing the Tree Marks to customers "based on proposed use in territory, industry, duration, placement or print run[,]" and "[o]n information and belief, one or more of [these] images have been licensed for use by customers located within the State of New York, this judicial district, and elsewhere." (*Id*. at ¶¶ 24, 25.)

Again, the Court does not know whether Plaintiffs will be able to prove that (1) Defendants knew, at any point after they made available on their website images containing the Tree Marks, that their actions constituted trademark infringement, and (2) Defendants' customers have infringed on the Tree Marks, such that Defendants may be held liable for inducing this infringement. However, at this stage of the proceeding, it is enough that Plaintiffs have alleged facts plausibly suggesting that (1) Defendants' customers, through commercial use of images licensed from Defendants containing the Tree Marks, have infringed on Plaintiffs' Tree Marks, and (2) Defendants induced this infringement by offering licensing rights to images containing Plaintiffs' Tree Marks, despite knowing that the images constituted infringement. *See R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp.2d 39, 84 (S.D.N.Y. 2009) ("Ultimately, all those who knowingly play a significant role in furthering trade dress infringement are liable as contributing parties."); 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:19 (4th ed. 2009) ("Everyone who knowingly participates in the preparation, distribution and sale of infringing goods or services is potentially liable as a contributory infringer."); *New York Stock Exch., Inc. v. Gahary*, 196 F. Supp.2d 401, 414 (S.D.N.Y. 2002) (describing contributory trademark infringement as occurring "when one party supplies another with the means (e.g.,

product, labels, advertising) by which the other is able to infringe").[19]

As a result, the Court denies Defendants' motion to dismiss Plaintiffs' contributory infringement claim.

## 2.    Vicarious Liability

"Vicarious trademark infringement, a theory of liability considered elsewhere but not yet the subject of a decision by this Circuit, 'requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'" *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp.2d 228, 247 (S.D.N.Y. 2010) (quoting *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 [7th Cir. 1992]); *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007); *see also Banff Ltd. v. Ltd., Inc.*, 869 F. Supp. 1103, 1111 (S.D.N.Y. 1994) (noting that Second Circuit had not yet had occasion to consider the theory). "[V]ague, puffery-like references to a 'partnership' between . . . [parties is] not enough to support vicarious liability." *Gucci Am., Inc.*, 721 F. Supp.2d at 247.

In support of their vicarious liability claims, Plaintiffs allege that Defendants (1) have an apparent or actual partnership with the photographers who created Defendants' Images and/or the customer licensees of those Images, (2) have the authority to bind the photographers and/or the licensees in transactions with third parties, and (3) exercise joint ownership or control over the images created by the photographers, and posted on their website.

---

[19]      *See also Power Test Petroleum Distribs., Inc. v. Manhattan & Queens Fuel Corp.*, 556 F. Supp. 392, 394 (E.D.N.Y.1982) (quoting *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.*, 295 F. Supp. 479, 496 [S.D.N.Y. 1968]) ("[A] defendant is liable for infringement of plaintiff's registered mark if defendant knowingly 'supplied the ammunition' that allowed the wrongful user to complete the infringement."); *The Proctor & Gamble Co. v. Haugen*, 317 F.3d 1121, 1128 (10th Cir. 2003) ("The elements of a contributory liability claim are . . . (1) supply of a product and (2) knowledge of direct infringement.").

As an initial matter, the Court finds that these conclusory allegations, which simply recite the elements of a vicarious liability claim, do not contain facts plausibly suggesting either (1) the existence of a partnership, or (2) joint ownership over the images created by the photographers. *See Gucci Am., Inc.*, 721 F. Supp.2d at 247 ("Though Gucci has raised a number of factual allegations that indicate that Defendants' services were crucial to a website like TheBagAddiction.com's sale of infringing goods, there is insufficient evidence to plausibly infer an actual or apparent partnership. The vague, puffery-like references to a 'partnership' between these companies and website merchants are not enough to support vicarious liability.").[20]

Moreover, even assuming, for the sake of argument, that these allegations contain facts plausibly suggesting some sort of partnership through which the parties have joint ownership over the pictures taken by the photographers, and licensed by Defendants to third parties, the Court finds that Plaintiffs have failed to allege facts plausibly suggesting that the photographers, for whose infringement Defendants are allegedly vicariously liable, placed any photographs containing the Tree Marks in commerce (i.e., infringed on Plaintiffs' Tree Marks).  Rather,

---

[20]      *See also Mertik Maxitrol GMBH & Co. KG v. Honeywell Techn. Sarl*, 10-CV-12257, 2011 WL 1454067, at *5 (E.D. Mich. Apr. 13, 2011) (dismissing, in copyright and trade dress infringement action, plaintiffs' vicarious liability claim because "[p]laintiffs assert[ed] no facts in support of this claim, but simply recite[d] the elements of a vicarious liability claim . . . [, and] [a]bsent factual support, such conclusory assertions are insufficient to establish a plausible claim of vicarious liability"); *J & J Sports Prod., Inc. v. Daley*, 06-CV-0238, 2007 WL 7135707, at *3 (E.D.N.Y. Feb. 15, 2007) ("The facts of this case plainly establish a reasonable basis for liability against Kev's: the business had no license to show the Event to its patrons, and Larkin's testimony demonstrates that it nevertheless did so. However, J & J's attempt to have the individual defendant Daley pay damages raises a more difficult issue, because nothing in the record supports a conclusion that Daley should be held personally responsible for the actions of Kev's. The Complaint sets forth only conclusory allegations based on information and belief to the effect that he is the company's principal, that he supervises and controls its operations, and that he derives financial benefit from the company. . . . Such generalized allegations cannot suffice to establish vicarious liability for damages under [even] the copyright infringement standard that J & J urges me to apply–a standard that requires a showing of the individual defendant's right and ability to supervise the challenged activity coupled with obvious and direct financial interest.").

Plaintiffs have alleged facts plausibly suggesting that the photographers "created" the infringing images that Defendants posted on their website and license(d) to customers.  (Dkt. No. 28, at ¶¶ 31, 60-62.)  However, the creation of the images alone does not give rise to trademark liability. Instead, it is the act of placing these images into commerce, such that a likelihood of "confusion as to the source or origin of Defendants' Images" arises, which gives rise to a claim of infringement.  *See* 15 U.S.C. s 1114(1)(a) (defining infringement based on "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services" to require "use in commerce").[21]

For these reasons, the Court grants Defendants' motion to dismiss Plaintiffs' vicarious liability claim.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 14) is **GRANTED in part and DENIED in part** in the following respects:

---

[21]     *See also Bird v. Parsons*, 289 F.3d 865, 878 (6th Cir. 2002) (finding a domain name registrar not liable for the infringement caused by the domain name owner because the registrar did not use the mark in commerce, reasoning that "[a] registrar that grants a particular domain name to a registrant simply grants it an address. . . . [; t]he fact that the registrant can then use its domain name to infringe on the rights of a registered trademark owner does not subject the registrar to liability for trademark infringement or unfair competition"); *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998) (noting that "no infringing use of the mark [can] occur[] [when] the mark [i]s not being used in commerce"); *cf. Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984–85 (9th Cir. 1999) (finding registrar not liable for contributory infringement based on issuance of registration of potentially infringing domain names to third parties).

(1) Defendants' motion is **<u>GRANTED</u>** to the extent that it requests the

**<u>DISMISSAL</u>** of Plaintiffs' vicarious liability claim for failure to state a claim

upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); and

(2) Defendants' motion is **<u>DENIED</u>** in all other respects (the denial of

Defendants' alternative motion for summary judgment being without prejudice);

and it is further

**ORDERED** that Plaintiffs' cross-motion for discovery pursuant to Fed. R. Civ. P. 56

(Dkt. No. 16) is **<u>GRANTED</u> in part and <u>DENIED</u> in part** in the following respects:

(1) Plaintiffs' cross-motion is **<u>GRANTED</u>** to the extent that it requests that the

Court **<u>DENY</u> without prejudice** Defendants' motion for summary judgment; and

(2) Plaintiffs' cross-motion is **<u>DENIED</u> as moot** to the extent that it requests that

the Court defer its decision on Defendant's motion pending Plaintiff's receipt of

further discovery, and/or their ability to further brief the issues.  This proceeding

shall return to Magistrate Judge Lowe for, *inter alia*, the supervision of the

conducting of discovery.

Dated:  September 27, 2011
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

23