## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

CAR-FRESHNER CORPORATION and
JULIUS SÄMANN LTD.,

                      *Plaintiffs,*

       v.

GETTY IMAGES, INC. and GETTY
IMAGES (US), INC.,

                      *Defendants.*

Civil Action No. 7:09-cv-01252 (GTS/DEP)

## STATUS REPORT

On March 27, 2012, Magistrate Judge David E. Peebles directed Plaintiffs, after

conferring with Defendants, to file a summary status report regarding the outstanding issues in

the case by April 20, 2012.  Plaintiffs have conferred with Defendants' counsel by letter, email

and call, and submit this status report on their own behalf pursuant to the Court's directive.

## I.      Factual Background:

Plaintiff Julius Sämann Ltd. ("JSL") is the owner of the famous and renowned tree design

mark (the "Tree Design Mark") registered and used in connection with air fresheners and a

variety of other products.  Plaintiff CAR-FRESHNER Corporation ("CFC") is a licensee of JSL that

manufactures and distributes tree-shaped air fresheners.  First introduced in the 1950's,

Plaintiffs' products are now known as a well-recognized symbol of quality fragrances.  For

decades, Plaintiffs have devoted enormous resources to advertise and promote their Tree Design

Mark.  With over 60 years of advertising and sales, millions of consumers have either seen or purchased one of Plaintiffs' tree-shaped air fresheners.

Plaintiffs devote considerable resources maintaining strict quality control over the uses of their Tree Design Mark to ensure it is only associated with quality products and services meeting Plaintiffs' high standards.  Plaintiffs assiduously police the uses of the Tree Design Mark, preventing unauthorized third parties from free riding on Plaintiffs' goodwill and from diminishing the distinctive nature of Plaintiffs' Mark.  The Tree Design Mark is to Plaintiffs what the Swoosh is to Nike and the contour glass bottle shape is to Coca-Cola – an invaluable corporate asset that they guard vigorously.

Defendants, their related entities, and contractual partners, deploy numerous websites to license still images, footage, and other media to various customers around the world. Defendants' media is offered for license for a wide variety of uses.  Their websites feature sophisticated search tools for locating images or videos containing virtually anything using keyword terms.

Defendants have offered for license and/or licensed to third parties at least 33 different images of Plaintiffs' Tree Design Mark without Plaintiffs' permission.  Some of the images are exact reproductions of the Tree Design Mark or appear to be photographs of Plaintiffs' own products, while others are independent creations that are confusingly similar to Plaintiffs' Tree Design Mark (collectively the "Infringing Images").

Despite knowing of Plaintiffs' rights in the Tree Design Mark, and Plaintiffs' repeated requests to remove the images, Defendants have refused to filter these images upon intake – even though they have the ability to do so.  Defendants have licensed images of the Tree Design Mark

to customers expressly for use in commercial applications, without specifically informing customers that Plaintiffs' permission is required prior to use.  One such customer, Jacobson Rost, Inc., provided deposition testimony stating its belief that, under the circumstances by which it licensed an image of the Tree Design Mark from Defendants, it could "use [the image] … in any of our advertising without any further permissions from Getty … [o]r anyone else …."
Deposition of Erin Mulhern Jelak, p.34.

Defendants' misuse of Plaintiffs' Tree Design Mark in the marketing and licensing of their images has caused and, is likely to continue to cause, confusion, mistake or deception of the public as to Plaintiffs' possible affiliation or connection with, or sponsorship of, Defendants or their licensees or their respective images.  Consumers of Defendants' services also are likely to believe that they have obtained licenses for the unfettered right to use any of Defendants' Infringing Images depicting the Tree Design Mark in commercial advertisements.  Such uses of Plaintiffs' Tree Design Mark dilute the distinctiveness of Plaintiffs' Mark to Plaintiffs' detriment.

## II.   <u>Outstanding Discovery Disputes:</u>

As indicated during the last status conference, Plaintiffs have been trying for more than a year and a half to obtain core information from Defendants.  Specifically, Plaintiffs repeatedly have requested documents and information to identify: i) who the proper Defendants are; ii) the images Defendants have posted and/or licensed which contain the Tree Design Mark; iii) the specific corporate identity(ies) of the entity(ies) involved in the licensing of the Infringing Images and the websites used by each; and iv) the individual(s) primarily responsible for procuring and licensing the Infringing Images.  Unfortunately, it is Plaintiffs' position that

Defendants are shielding this information behind a tangled web of worldwide corporate affiliates, countless identified and unidentified websites, foreign employees and a myriad of foreign and domestic third party distributors.

    **A.      What Plaintiff Has Accomplished & Agreements
               Reached Between the Parties**

Since the last status conference, Defendants supplemented their prior discovery responses on March 30, 2012.  After reviewing those responses and determining Defendants to still be deficient, on April 9, 2012, Plaintiffs sent Defendants a letter that outlined in detail the reasons why Defendants' discovery responses remained insufficient (the "Deficiency Letter").  Plaintiffs also served a Fed. R. Civ. P. 30(b)(6) Deposition Notice for April 19, 2012.  Copies of Plaintiffs' Deficiency Letter and Deposition Notice are collectively attached as Exhibit 1.  On April 14, 2012, Defendants' counsel responded by promising to provide additional supplemental responses.  A copy of their response letter is attached as Exhibit 2.

Defendants additionally agreed that a Rule 30(b)(6) deposition would be beneficial, but declined to produce a witness on April 19, 2012 for deposition in New York.  Defendants indicated they would be willing to provide a witness in late April or in May (although they have not proposed any specific dates) and would make that witness available only in Seattle.

Also in their April 14 letter, Defendants offered to provide an affidavit from a senior person with knowledge to provide certain key information that Defendants concede has not been produced to date.  We agreed that an affidavit would likely be helpful and depending on that affidavit, some topics set out in Plaintiffs' Rule 30(b)(6) Notice may be streamlined. However, we were informed by Defendants' counsel that they were unable to provide the affidavit by

today, April 20, 2012, and no further supplemental responses or document productions have been received.

**B.      Remaining Discovery Disputes Needing Court Intervention**

Plaintiffs are hopeful Defendants' promised supplementations and forthcoming affidavit will help eliminate at least some of the remaining discovery disputes.  However, as of this filing, there still remain a few key unresolved issues in discovery which may need court intervention. Plaintiffs provide below an outline of the presently outstanding discovery issues:

**1.      Relationship among the Getty Images entities
and third party providers**

A fundamental and rather simple inquiry of Defendants (in Plaintiffs' Interrogatories Nos. 1 and 12-14) is for them to provide an explanation of the relationships among all the various Getty Images entities, their control over Defendants' websites, their relationships to third party image distributors, and to identify which of these entities was responsible for licensing the Infringing Images to customers.  Defendants' responses to date have inadequately addressed these inquiries.  They rely primarily on a document, reproduced on several occasions, entitled the "Getty Images License History For Specific Assets" (the "License History Report(s)").

As noted in Plaintiffs' letter of April 9, 2012, neither the License History Report(s) nor any other supplemental responses provide:

(i) a list, by formal corporate name(s), of each company affiliated with Getty and/or Getty US that offer photographic images for license; (ii) with an explanation of the relationship(s) among those Getty Images' entities, including a separate list of those entities which specifically offered the Infringing Images

and a separate list of every websites that offered the Infringing Images; or (iii) reference to a document(s) which provides that information.

Defendants' inadequate responses to these questions are inexcusable. The information sought is vital to Plaintiffs' understanding of Defendants' businesses, the relationship(s) and control among the named parties and third parties, control of discoverable information, identifying potential parties for inclusion in this case, knowledge of the accused infringing acts in question, identity(ies) of potential third party sources of information by way of subpoena, the potential damages at issue, and the ability of Plaintiffs to make informed and pinpointed discovery demands.

### 2.      Additional Infringing Images

Defendants stated in their Supplemental Responses that they have "to the best of our knowledge . . . produced <u>all</u> licenses of Little Tree Images granted by entities within the Getty Images corporate family . . ." However, they have made no such representation regarding the completeness of their search for Infringing Images other than those Plaintiffs previously uncovered in the Complaint and Amended Complaint. Moreover, as is clear from the License History Reports, there are entities outside of the Getty Images corporate family that have licensed Infringing Images to customers by way of contractual authority from Defendants. Defendants have not attested to the completeness of their search for Infringing Images from such authorized entities within their contractual control.

Notwithstanding Defendants' representations that they thoroughly searched their records and produced all relevant Infringing Images, since the last status conference with the Court, Plaintiffs' uncovered a variety of additional images being made available by Defendants, but not

disclosed to Plaintiffs.  These clearly should previously have been disclosed by Defendants in

discovery, but were not.  The Infringing Images clearly depict Plaintiffs' Tree Design Mark, or

confusingly similar designs, but are being made available by Defendants to their commercial

customers.  For example, Exhibit 3, an image of multiple hanging CAR-FRESHNER branded tree-

shaped air fresheners, was found by Plaintiffs' counsel using a search query of "Car Freshener."

In an email on October 26, 2010, Defendants' counsel represented to Plaintiffs' counsel that they

had included in their search a query for all images that included the term "Freshener."

Therefore, any subsequent searches should have picked up the image in Exhibit 3.

Additionally, in the April 14 letter, Defendants identified yet another previously

unidentified image containing Plaintiffs' Tree Design Mark.[1]  Defendants did not produce that

image, but indicated it was located using some different search criteria other than what

previously was used in responding to discovery.

The existence of newly identified images containing the Tree Design Mark on

Defendants' websites which were not previously produced by Defendants or included in their

License History Report(s) (on which they rely) continues to be of concern.  Despite Defendants'

assertions that they have searched thoroughly for every image that contains the Tree Design

Mark, there is much to be done to assure that Defendants' discovery responses are fully

compliant.  Defendants do not suggest that this is an unexpected turn of events, but rather that

they are "not surprised that additional images containing a Car-Freshner air freshener will

surface from time to time given the technology currently available to isolate them."  However, it

_____

[1]       The image identified is "an editorial view of an Iraqi soldier seen through the windshield of a vehicle in which [a tree-shaped] air freshener hangs."

is not the duty of Plaintiffs to uncover all of Defendants' infringing activity.  Rather, it is

Defendants' duty to be diligent in disclosing these activities.  If Plaintiffs' counsel can uncover

these images using simple search terms, there is no reason that Defendants cannot do the same,

and with greater facility and success.

### 3.      Identity of Responsible/Knowledgeable Getty Witnesses

In their Supplemental Responses, Defendants indicated that an individual previously

identified as having knowledge of Defendants' procurement and licensing of Defendants'

Infringing Images has left Defendants' employ.  Defendants have not amended their initial

disclosures to provide the last known address and contact information for that individual.  In

addition, Defendants have identified relevant witnesses not in Defendants' employ, but rather in

the employ of Defendants' United Kingdom affiliate[2].  To the extent Defendants are relying on

the actions of their foreign affiliates and such foreign witnesses under their corporate umbrella,

Plaintiffs will either need to add those foreign affiliates as parties or will need some stipulation

by Defendants that: (1) they will be liable for the actions of their foreign affiliates, and (2) the

records and witnesses controlled by those affiliates will be treated as corporate records and

employees of the Defendants for purposes of discovery and trial.

---

[2]   This further underscores Plaintiffs' concerns over whether it has all the correct parties as defendants in this action.
For core issues to this action, Defendants apparently rely upon actions taken by other affiliates within their corporate
umbrella.

### 4.   Location of Deposition of Defendant Getty Images (US), Inc.

As discussed above, Plaintiffs noticed a Rule 30(b)(6) deposition for Defendant Getty Images (US), Inc. for Thursday, April 19, 2012 and requested that the first deposition be limited to the first 17 topics contained in the Deposition Notice.  Plaintiffs believe that such a deposition would go a long way to providing much needed information on the identities and corporate structure of the Getty Images family of companies, the various relationships among those companies, and the identity(ies) and control over the various websites that offer to license images, including those images containing the Plaintiffs' Tree Design Mark or confusingly similar designs.  Defendants objected to the date, but have not yet suggested an alternative date. In addition, Defendants have objected to having the deposition take place in New York and instead wish for both Plaintiffs' and Defendants' counsel to have to travel to Seattle.  Even though this case is pending in New York and both parties' counsel are all located on the East Coast, Defendants offer no compelling reason to require everyone to travel to Seattle when it would be more cost-efficient to have a single witness travel to New York.

## III.   Settlement History and Status

After the Complaint was filed in November 2009, counsel for the parties initially discussed settlement on or about December 2009.  Both parties exchanged settlement proposals, and both proposals were rejected.  Since then, no resolution has been reached and the parties are proceeding with the litigation.

In early 2011, during the pendency of Defendants' Motion to Dismiss or for Summary Judgment, the parties had a number of telephonic discussions and exchanged multiple email communications, during which the potential for settlement again was broached.  Following that

exchange, principals of the parties discussed settlement by telephone in July 2011.  The parties

were unable at that time to reach agreement, in part over some of the business terms requested by

Defendants.  However, Plaintiffs expressed their continuing interest in reaching a negotiated

settlement if Defendants were willing to engage in those discussions without insisting upon

business terms that are not workable.  In September 2011, Defendants reiterated their proposed

continuing business arrangement that Plaintiffs previously found to be unacceptable.  Plaintiffs

again requested a meeting to explore settlement.  No further settlement discussions have been

held.

On April 18, 2012, Plaintiffs' counsel contacted Defendants' counsel to again broach the

topic of settlement, which has not been discussed since the Court's decision denying Defendants'

motion to dismiss.  Counsel for Defendants is exploring that possibility with their clients.

Should the parties not reach an accord, then Plaintiffs believe that Court assisted

mediation could be productive and would welcome Magistrate Judge Peebles' assistance in

trying to resolve this matter. However, Defendants' counsel has indicated that they have not yet

decided whether a court conference would be useful at this time.


Dated:  April 20, 2012                By:  _____/s/ Michelle Mancino Marsh_____
                                      KENYON & KENYON LLP
                                      Michelle Mancino Marsh (516463)
                                      Aaron D. Johnson (517440)
                                      One Broadway
                                      New York, NY 10004
                                      Telephone: 212-908-6180
                                      Fax: 212-425-5288
                                      mmarsh@kenyon.com
                                      ajohnson@kenyon.com

                                      Edward T. Colbert (admission pending)
                                      William M. Merone (*pro hac vice*)

Erik C. Kane (*pro hac vice*)
1500 K Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 220-4200
Fax: (202) 220-4201
ecolbert@kenyon.com
wmerone@kenyon.com
ekane@kenyon.com

OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, L.L.P.
Roberta S. Bren (501683)
Jonathan Hudis (507478)
1940 Duke Street
Alexandria, VA 22314
Telephone: (703) 413-3000
Fax: (703) 413-2220
rbren@oblon.com
jhudis@oblon.com

HANCOCK ESTABROOK LLP
Ashley D. Hayes (511333)
1500 AXA Tower 1
100 Madison Street
Syracuse, NY 13202
Phone: (315) 471-3151
Fax: (315) 471-3167
ahayes@hancocklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 20, 2012, a copy of the foregoing STATUS REPORT was served on Defendants' counsel by sending the pleading to the following addresses by email and first class mail:

James E. Rosenfeld, Esq.
Christopher J. Robinson, Esq.
DAVIS WRIGHT TREMAINE LLP
1633 Broadway, 27th Floor
New York, NY 10019
Email: JamesRosenfeld@dwt.com
Email: ChrisRobinson@dwt.com

Douglas J. Nash, Esq.
HISCOCK & BARCLAY, LLP
One Park Place
200 South State Street
Syracuse, NY 13202
Email: DNash@hblaw.com

/s/ Aaron D. Johnson
Aaron D. Johnson